## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AMERICAN POSTAL WORKERS UNION, | : | | |
| AFL-CIO, | : | | |
| | : | Civil Action No.: | 13-1694 (RC) |
| Plaintiff, | : | | |
| | : | Re Document Nos.: | 8, 13 |
| v. | : | | |
| | : | | |
| UNITED STATES POSTAL SERVICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Granting Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment; Denying Plaintiff's Motion For Summary Judgment

## I. INTRODUCTION

Plaintiff, the American Postal Workers Union, AFL-CIO ("APWU" or "Union"), brought this action against Defendant, the United States Postal Service ("Postal Service"), ostensibly seeking enforcement of a global settlement agreement that resolved a national level grievance filed under the parties' collective bargaining agreement. The Postal Service has moved to dismiss the action under Rule 12(b)(6), or in the alternative for summary judgment under Rule 56, on the basis that the APWU's lawsuit is not ripe for judicial enforcement because a dispute exists regarding how, if at all, the global settlement was intended to remedy a discrete set of past grievances, and that dispute first must be resolved through the grievance-arbitration process set forth in the collective bargaining agreement. The APWU has filed a cross-motion for summary judgment in which it argues that no dispute exists about the interpretation and application of the global settlement, and as such, further arbitration is not required before the Court can issue an enforcement order. Upon consideration of the parties' motions, the memoranda in support

thereof and opposition thereto, and the evidentiary record submitted by both parties to supplement their filings, the Court will grant the Postal Service's motion for summary judgment and deny the APWU's cross-motion for summary judgment.

## II. FACTUAL BACKGROUND

The APWU is an unincorporated labor organization recognized by the Postal Service as the exclusive bargaining representative for postal employees in several categories, including the clerk, maintenance, and motor vehicle crafts. *See* Compl., ECF No. 1, at ¶ 3; McKinnon Decl., ECF No. 12-4, at ¶ 2. The Postal Service and the APWU are parties to a collective bargaining agreement, called the "2010 National Agreement," that sets forth the terms and conditions of employment for employees in the bargaining units represented by the APWU, as well as restrictions on the extent to which non-bargaining unit postal employees may perform designated bargaining unit work. *See* Compl., ECF No. 1, at ¶ 5.

In particular, Article 1.6.B of the 2010 National Agreement states that "[i]n offices with less than 100 bargaining unit employees, supervisors are prohibited from performing bargaining unit work except as enumerated in Section 6.A.1 through 5 above or when the duties are included in the supervisor's position description." *Id.* ¶ 6; *see also* Arbitration Award, ECF No. 8-4, Reimer Decl., Ex. 2 at 3. A largely unchanged version of Article 6.1.B has been included in previous collective bargaining agreements between the parties, and the APWU and the Postal Service have gotten into numerous disputes and grievances over the years about the interpretation and application of this provision. *See* Compl., ECF No. 1, at ¶¶ 7-8.

Disputes about Article 6.1.B and other provisions in the 2010 National Agreement are addressed through the procedure set out in Article 15 of the collective bargaining agreement, which provides for a multi-step grievance process that culminates in arbitration either at the

national, regional, or district level depending on the nature of the underlying disagreement. *See generally* 2010 National Agreement, ECF No. 8-3, Reimer Decl., Ex. 1. Arbitration at the national level occurs for "cases involving interpretive issues under [the 2010 National] Agreement or supplements thereto of general application." *Id*. at 32-33 (Art. 15.5.D.1). In contrast, district or regional level arbitration generally concerns disputes about the application of the 2010 National Agreement to particular facts in a specific location. *See id.* at 28-30 (Art. 15.5.B). Article 15 also includes a mechanism for staying district and regional arbitration when either party gives notice that a new national level dispute involves an interpretive issue under the 2010 National Agreement or one of its supplements. *See id*. at 29-30 (Art. 15.5.B.5). Finally, Article 15 provides "that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated at Step 4 level by either party." *Id*. at 25 (Art. 15.4.D).

The last national level dispute about Article 1.6.B prior to the 2010 National Agreement was Case Q06-4Q-C 10005587. *See* Compl., ECF No. 1, at ¶ 9. This dispute involved the Postal Service assigning bargaining unit work to supervisors or postmasters, rather than to bargaining unit employees. *See id.* Pursuant to Article 15, the APWU and the Postal Service adjudicated the dispute through Arbitrator Shyam Das, *see id.*, and numerous other grievances and disputes between the parties relating to the same or similar issues were stayed pending resolution of the national dispute, *see id.* ¶ 10. In November 2010, Arbitrator Das issued an arbitration award in Case Q06-4Q-C 10005587 recognizing the APWU's claim that there was a cognizable dispute under the 2010 National Agreement and remanding the dispute to the parties for further discussion in accordance with Article 15's grievance-arbitration process. *See id.* ¶ 11.

In March 2011, the APWU and the Postal Service agreed to settle the national dispute through the Case Q06-4Q-C 10005587 Global Settlement ("Global Settlement"). *See id.* ¶¶ 12-13; *see also* Global Settlement, ECF No. 8-3, Reimer Decl., Ex. 1 at 34-35. The Global Settlement, which became effective on May 23, 2011, established specific limits on the total number of hours of bargaining unit work a postmaster or supervisor can perform per week at different levels of post offices with less than one hundred bargaining unit employees. *See* Compl., ECF No. 1, at ¶ 16; *see also* Global Settlement, ECF No. 8-3, Reimer Decl., Ex. 1 at 34-35. Several disputes, however, have arisen regarding the interpretation of provisions in the Global Settlement.

Of particular relevance here, one dispute involved the interpretation and application of a clause in the Global Settlement which states that "[a]ll time the supervisor or Postmaster spends staffing the window during the day will be counted towards the permissible bargaining unit work limits." Global Settlement, ECF No. 8-3, Reimer Decl., Ex. 1 at 35. In an arbitration award dated March 2013, Arbitrator Das took the APWU's position in the dispute by finding that this provision applied to all time in which, in the absence of the clerk, the window was open and not just the time in which a postmaster or supervisor actually assisted customers at the window. *See* Arbitration Award, ECF No. 8-4, Reimer Decl., Ex. 2 at 31-32; *see also* Compl., ECF No. 1, at ¶ 26. In that same award, Arbitrator Das directed the parties to work on resolving "[i]ssues relating to remedy," and he retained "jurisdiction to decide any remedial issues that the parties are unable to resolve." Arbitration Award, ECF No. 8-4, Reimer Decl., Ex. 2 at 32.

Following the March 2013 arbitration award, the parties were unable to agree on the appropriate remedy, if any, for the grievances and disputes that predated the award. The

disagreement centered on the parties' differing interpretations of the first paragraph in the Global Settlement, which states:

> The parties agree that grievance Q06-4Q-C 10005587 will be resolved effective with the signing of this settlement. The parties further understand that any cases held in abeyance pending the outcome of this case will be affected by this settlement. Those cases will be returned to the level they were held for further processing.

Global Settlement, ECF No. 8-3, Reimer Decl., Ex. 1 at 34. Specifically, the parties disagreed about how, if at all, the terms and conditions of the Global Settlement applied to disputes during two timeframes: conduct during the years preceding the effective date of the Global Settlement (*i.e.*, the period before May 23, 2011); and conduct during the interim period between the Global Settlement and the March 2013 arbitration award (*i.e.*, the period between May 23, 2011, and March 29, 2013). The term "cases held in abeyance" in the Global Settlement refers to those grievances in the first category — that is, conduct that predated the Global Settlement. *See* Postal Service Resp. Brief, ECF No. 8-8, Reimer Decl., Ex. 6 at 7-8.

On August 16, 2013, in response to the APWU's remedy briefing, the Postal Service requested additional arbitration hearing days to develop the record about the proper remedy for the pre-Global Settlement cases held in abeyance. *See id.* at 6-7. The parties, however, were unable to identify a mutually convenient date within the 2013 calendar year for holding these hearing days. *See generally* Various Emails between Reimer and Holmes, ECF No. 8-10, Reimer Decl., Ex. 8. On September 12, 2013, the Postal Service's counsel emailed the APWU's counsel to clarify that he sought additional hearing days regarding only the question of the appropriate remedy for conduct preceding the Global Settlement, whereas the question about the proper remedy for conduct during the interim period — that is, the conduct between the Global Settlement and the March 2013 arbitration award — could be decided on the existing briefs and arbitration record. *Id*. at 3-4. The APWU responded by proposing to "separate out and remove"

the pre-Global Settlement conduct remedy question, thus giving to the arbitrator only the question of the proper remedy for the interim conduct. *See id.* The next day, the Postal Service followed up to clarify that the APWU was recommending to bifurcate the issues by having the arbitrator decide the interim period remedy question based on the briefs and leaving the pre-Global Settlement conduct remedy question for "another day." *Id.* at 1. The APWU replied, "Yes, I think that's right." *Id.*

In an email on September 25, 2013, the APWU conveyed this understanding to Arbitrator Das, explaining that the parties agreed for him to decide only the interim conduct remedy question at this time. *See* Email from Holmes to Das, ECF No. 8-11, Reimer Decl., Ex. 9. In accordance with the APWU's directive, the arbitrator issued a supplemental remedy award in October 2013 granting the Union's desired remedy for the interim conduct; specifically, the arbitrator's award provided for, among other things, back pay to the bargaining unit employees who would have been assigned work had it not been performed by a postmaster or supervisor. *See* Suppl. Remedy Award, ECF No. 8-12, Reimer Decl., Ex. 10 at 6, 11. As the parties had agreed, the supplemental award did not address the remedy for the pre-Global Settlement cases held in abeyance. *See* Compl., ECF No. 1, at ¶ 31. To date, no arbitration or additional hearing days have occurred regarding the remedy for pre-Global Settlement conduct. *See* Reimer Decl., ECF No. 8-2, at ¶ 18; McKinnon Decl., ECF No. 12-4, at ¶ 13.

On October 29, 2013, the APWU filed the instant lawsuit asking the Court to issue a judgment ordering the Postal Service to apply the Global Settlement's work hour limitations and other terms to those grievances and disputes dealing with conduct prior to the settlement that were held in abeyance. *See* Compl., ECF No. 1, at 7 ("Wherefore" Paragraph). In accordance with that request, the APWU also asks that the Court award damages, including restitution and

back pay, to the affected bargaining unit employees in the cases held in abeyance, just as the arbitrator ordered for the interim conduct remedy. *See id.*

Now before the Court are the Postal Service's motion to dismiss under Rule 12(b)(6), or in the alternative for summary judgment under Rule 56, and the APWU's cross-motion for summary judgment. Through its motion, the Postal Service disagrees with the APWU's characterization that it merely seeks to enforce the Global Settlement. Instead, the Postal Service argues that the Union is attempting to avoid the collectively bargained-for grievance-arbitration process by having the Court, rather than an arbitrator, resolve the dispute about how, if at all, the Global Settlement was intended to apply to the cases held in abeyance. *See* Def.'s Mem. Supp. Mot. Dismiss, ECF No. 8, at 10.

The Postal Service further argues that the APWU has two options for resolving this dispute, neither of which involves a lawsuit in federal court: it can arbitrate the dispute, or it can choose not to arbitrate and waive the issue. *See id.* Either way, the Postal Service contends, until the interpretive dispute is resolved, this Court lacks jurisdiction to entertain the Union's lawsuit seeking enforcement of the Global Settlement. The APWU, on the other hand, argues that no dispute exists between the parties regarding interpretation of the Global Settlement, and as such, the Court should enter judgment in its favor because further arbitration is not required. *See* Pl.'s Mem. Supp. Mot. Sum. J., ECF No. 12, at 1-2. The Court addresses the parties' arguments below.

## III. LEGAL STANDARD

Courts have treated a motion premised on the plaintiff's failure to exhaust a collectively bargained-for grievance-arbitration process as a motion to dismiss for failure to state a claim

under Rule 12(b)(6) or for summary judgment under Rule 56.[1] *See, e.g.*, *Noble v. U.S. Postal Serv.*, 537 F. Supp. 2d 210, 218-19 (D.D.C. 2008) (granting summary judgment and holding that the court lacks jurisdiction to hear the claim when plaintiff did not exhaust the grievance-arbitration procedures in the collective bargaining agreement); *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 31 (D.D.C. 2006) (granting Rule 12(b)(6) motion when it was "undisputed that plaintiffs have not exhausted" the grievance-arbitration procedures in the collective bargaining agreement).

In deciding whether to dismiss a complaint for failure to state a claim under Rule 12(b)(6), a court "must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 13 (D.D.C. 2010) (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003)). A court deciding a Rule 12(b)(6) motion generally does not consider matters beyond the pleadings. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011). This means that a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint

---

[1]  The Postal Service also suggests that its motion can be treated as a Rule 12(b)(1) motion to dismiss. Although there is some support for such an approach, *see, e.g.*, *Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*, 646 F. Supp. 2d 1, 2 (D.D.C. 2009), the Court finds that treating the motion as one under Rule 12(b)(6) and Rule 56 is more consistent with prior case law under the Postal Reorganization Act and other collective bargaining agreement actions, including claims under Section 301 of the Labor-Management Relations Act ("LMRA"), which provides guidance for Postal Reorganization Act cases, *see id.* at 3 n.2. *See, e.g.*, *Kaufman v. Pac. Mar. Ass'n*, No. C-12-5051, 2013 WL 1560300, at *2 (N.D. Cal. Apr. 12, 2013) (dismissing LMRA Section 301 claim under Rule 12(b)(6) when plaintiff failed to exhaust remedies in collective bargaining agreement); *Carson v. Sim*, 778 F. Supp. 2d 85, 94 (D.D.C. 2011) (same); *Bush v. Clark Const. & Concrete Corp.*, 267 F. Supp. 2d 43, 47 (D.D.C. 2003) (same); *Freeman v. Duke Power Co.*, No. 1:00CV00665, 2003 WL 21981291, at *6 (M.D.N.C. Aug. 15, 2003) (same).

necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Id.* at 119 (internal citations and quotation marks omitted).

If, however, a court considers documents outside this narrow orbit, it must convert the motion from one under Rule 12(b)(6) to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Here, both parties have submitted evidence other than that specifically referenced in or relied on by the complaint, and the Court's consideration of these materials implicates the rule requiring conversion into a summary judgment motion. Indeed, the APWU cross-moves exclusively for summary judgment based on the evidentiary record provided by both parties.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [thus] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord. Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of persuasion at trial, its burden "may be discharged by 'showing' — that is, pointing

out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party has met its burden, to defeat the motion the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324 (citation omitted). Although the Court must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *see Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23-24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position — "there must be evidence on which the jury could reasonably find for [the nonmoving party]." *Anderson*, 477 U.S. at 252. Moreover, the nonmoving party "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted).

When both parties file cross-motions for summary judgment, "each must carry its own burden under the applicable legal standard." *Ehrman v. United States*, 429 F. Supp. 2d 61, 67 (D.D.C. 2006); *Nuzzo v. FBI*, No. 95-CV-1708, 1996 WL 741587, at *1 (D.D.C. Oct. 8, 1996) ("When both parties in a cause of action move for summary judgment, each party must carry its own burden."). Finally, the Court notes that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted). Indeed, a court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." *Id*. (citation omitted).

# IV.  ANALYSIS

Title 39 U.S.C. § 1208(b) of the Postal Reorganization Act grants federal courts jurisdiction to entertain lawsuits for alleged violations of contracts between the Postal Service and a union representing postal workers.  To maintain a suit under that provision, however, a union first must exhaust the remedies provided for through the collective bargaining agreement. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987); *Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*, 646 F. Supp. 2d 1, 3-4 (D.D.C. 2009); *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 31 (D.D.C. 2006); *Sullivan v. Potter*, No. CIV.A. 05-00818, 2006 WL 785289, at *3-4 (D.D.C. Mar. 28, 2006).  As such, failure to exhaust the collectively bargained-for grievance-arbitration process requires dismissal of a plaintiff's claim.  *See Am. Postal Workers' Union*, 646 F. Supp. 2d at 4 (granting motion to dismiss because the "APWU has not exhausted the arbitration procedure at this time"); *Sullivan*, 2006 WL 785289, at *3 (D.D.C. Mar. 28, 2006) ("Before instituting a suit under … Section 1208(b) of the Postal Reorganization Act, a plaintiff is required to exhaust any grievance procedure provided for in the pertinent collective bargaining agreement." (citations omitted)); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 827 F. Supp. 836, 838-39 (D.D.C. 1993) (holding that the court lacks jurisdiction when the APWU failed to exhaust grievance and arbitration remedies before filing its lawsuit); *see also Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1158 (D.C. Cir. 1987) ("[E]mployees who failed to exhaust the grievance and arbitration proceedings, available to them, may not seek redress in court on claims that could and should have been grieved.").

Here, the APWU ostensibly asks this Court to enforce a provision in the Global Settlement by applying the terms of the agreement to a specific set of grievances and disputes

that were held in abeyance while the settlement was being negotiated. In support of its position, the APWU argues that no genuine dispute of material fact exists between itself and the Postal Service regarding how to remedy the pre-Global Settlement cases, and further arbitration therefore is not required. The Court disagrees.

In effect, the APWU asks the Court to hold that the Global Settlement applies to the cases held in abeyance in the same way that Arbitrator Das, in his March 2013 award, interpreted the settlement as applying to the interim conduct cases. But before the Court could enforce the Global Settlement to those disputes and grievances held in abeyance, it first would have to determine how the settlement was intended to remedy that unique set of conduct,[2] which involves choosing between the conflicting interpretations that the Union and the Postal Service support. It is well established that disputes about interpreting a collectively bargained-for settlement agreement require exhaustion through the grievance-arbitration process before a federal court may act. Because the evidence conclusively shows that a dispute exists and that the APWU has failed to exhaust the process set forth in Article 15 of the 2010 National Agreement, the Court must grant the Postal Service's motion for summary judgment.

## A. Arbitrability And Waiver

The APWU puts forth an overlapping argument that includes questions of whether the arbitrator is authorized to review the issue at hand under the collective bargaining agreement and, if so, whether the Postal Service has waived its right to arbitrate the issue. The Postal Service responds that not only did it never remove this issue from arbitration, but the parties

---

[2] The APWU does not argue that no dispute exists because the interim and pre-Global Settlement conduct must be remedied in the same manner under the clear terms of the settlement agreement. Thus, logic immediately suggests that if the interim conduct remedy question required arbitration to resolve a dispute, arbitration also is required for settling a dispute about the appropriate remedy for pre-Global Settlement conduct.

already agreed that the question was appropriate for arbitration before deciding to delay a decision until additional hearing days could be scheduled. *See* Def.'s Opp'n Pl.'s Mot. Summ. J., ECF No. 15, at 3-4, 9. For the reasons discussed below, the Court agrees with the Postal Service that if a dispute exists, it is arbitrable and was not waived.

1. The Grievance-Arbitration Process Under Article 15

The Postal Service argues that disputes between itself and the Union concerning the interpretation of a provision in the Global Settlement — including how the settlement applies to the cases held in abeyance — are subject to the grievance-arbitration process outlined in Article 15 of the 2010 National Agreement. *See* Def.'s Mem. Supp. Mot. Dismiss, ECF No. 8, at 23. "The law compels a party to submit [its] grievance to arbitration only if [it] has contracted to do so." *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 374 (1974); *see also Abrams v. Comm'ns Workers of Am.*, 59 F.3d 1373, 1382 (D.C. Cir. 1995); *Hammontree v. NLRB*, 925 F.2d 1486, 1517 (D.C. Cir. 1991); *Chicago Area Vending Emp'rs Ass'n v. Local Union No. 761*, 564 F. Supp. 1186, 1193 (N.D. Ill. 1983) ("An arbitration clause in a collective bargaining agreement does not necessarily mean that every dispute under the contract must be arbitrated. The disputed issue must be contemplated by the arbitration clause and not excluded thereunder."). Thus, "whether or not [a party is] bound to arbitrate … is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1974).

When making this determination, the Court must bear in mind that "the Supreme Court has consistently instructed that there is a strong presumption in favor of arbitration in labor disputes." *United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, 859 F. Supp. 590, 594 (D.D.C. 1994) (citations omitted). Thus, "'[i]n the absence of any express provision excluding a

particular grievance from arbitration … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 654 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960) (alteration in original)).

Article 15 of the 2010 National Agreement defines a grievance as "a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment," including, but not limited to, "the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement." 2010 National Agreement, ECF No. 8-3, Reimer Decl., Ex. 1 at 14 (Art. 15.1). The dispute resolution process calls for a multi-step grievance procedure culminating in arbitration for national level disputes, such as Case Q06-4Q-C 10005587. *See id.* at 14-21 (Art. 15.1-2). Article 15 further provides "that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated at Step 4 level by either party," and, if the parties are unable to reach an agreement within a specified period of time, the Union has thirty days to appeal the dispute to arbitration. *Id*. at 25 (Art.15.4.D).

The parties agree that the Global Settlement was included within the 2010 National Agreement, and the APWU makes no argument that the Article 15 grievance-arbitration process does not apply to a dispute about interpreting or applying the Global Settlement. *See* Compl., ECF No. 1, at ¶¶ 12-13; Global Settlement, ECF No. 8-3, Reimer Decl., Ex. 1 at 34-35; Suppl. Remedy Award, ECF No. 8-12, Reimer Decl., Ex. 10 at 4. Indeed, the APWU already agreed to arbitrate the nearly identical question of how the Global Settlement applies to conduct between the effective date of the settlement and the March 2013 arbitration award. The Union provides

no explanation for why that dispute required arbitration but the similar question about the proper

remedy for pre-Global Settlement conduct does not.

The APWU, moreover, acknowledges that following the March 2013 arbitration award,

the Postal Service submitted a question to the arbitrator regarding the correct remedy for the

cases held in abeyance.  *See* Pl.'s Resp. Def.'s State. Facts, ECF No. 12, at ¶ 15.  In fact, in the

Union's remedy brief, it specifically asked the arbitrator to resolve the dispute about the cases

held in abeyance pursuant to Article 15:

> The Postal Service is now claiming that the parties' agreement that those cases
> would be "affected by" the Global Settlement and "returned to the level they were
> held for further proceeding" means that the cases would be returned to the field to
> be closed without adjudication or remedy of any sort…. [T]he APWU submits
> this brief for the limited purpose of responding to a new issue it could not foresee,
> but **also to ask the Arbitrator to address the Postal Service's new argument in
> his remedy award in accordance with Article 15 of the National Agreement**.

APWU Remedy Reply Brief, ECF No. 8-7, Reimer Decl., Ex. 5 at 2-3 (emphasis added).

Although the Union attempts to distance itself from this position through its summary judgment

briefing, *see* Pl.'s Mem. Supp. Mot. Sum. J., ECF No. 12, at 15, the operative question is not

whether the APWU now is willing to arbitrate the issue.  Rather, all that matters is whether a

dispute would fall within the scope of the grievance-arbitration process that the parties agreed to

through collective bargaining, which it clearly would.  As such, the Union cannot bring a claim

in federal court to sidestep that process if the Court finds that a dispute regarding interpretation

of the Global Settlement exists.  *See Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*,

646 F. Supp. 2d 1, 4 (D.D.C. 2009) (granting the Postal Service's motion to dismiss when,

before bringing suit in this Court, the APWU failed to obtain an arbitration award regarding a

remedy issue through Article 15's grievance-arbitration process); *see also United Paperworkers*

*Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987) ("The courts have jurisdiction to

enforce collective-bargaining contracts; but where the contract provides grievance and arbitration

procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."); *United Mine Workers of Am., Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 811 (3d Cir. 1981) ("Federal courts are bound to exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution…. If the court has any doubt, the parties should be returned to their grievance procedure[.]" (citations omitted)).

2. The Arbitrator Retained Jurisdiction Over Global Settlement Remedy Disputes

The Court finds that a dispute about how to interpret the Global Settlement is arbitrable for a second reason. Following consummation of the Global Settlement, an issue quickly arose regarding the interpretation of a provision in the agreement which states that "[a]ll time the supervisor or Postmaster spends staffing the window during the day will be counted towards the permissible bargaining unit work limits." Global Settlement, ECF No. 8-3, Reimer Decl., Ex. 1 at 35. In an arbitration award dated March 2013, Arbitrator Das took the APWU's position in the dispute by finding that this provision applied to all time in which, in the absence of the clerk, the window was open and not just the time in which a postmaster or supervisor actually assisted customers at the window. *See* Arbitration Award, ECF No. 8-4, Reimer Decl., Ex. 2 at 31-32; *see also* Compl., ECF No. 1, at ¶ 26.

In that same arbitration award, Arbitrator Das directed the parties to continue working on "[i]ssues relating to remedy," and he specifically retained "jurisdiction to decide any remedial issues that the parties are unable to resolve." Arbitration Award, ECF No. 8-4, Reimer Decl., Ex. 2 at 32. Thus, the parties do not dispute that the arbitrator possessed jurisdiction to hear the initial remedy dispute about the Global Settlement, and he explicitly acknowledged that he retained jurisdiction to arbitrate future remedy questions of a comparable nature, which clearly

would include a similar dispute about whether the Global Settlement provides a remedy to the cases held in abeyance.

### 3.  Agreement Not To Arbitrate, Or Waiver Of Arbitration

In its summary judgment briefing, the APWU argues that "[t]he record shows that the parties expressly agreed not to have Arbitrator Das address the settlement of the long-pending grievances and advised him of the limits of his authority and jurisdiction."  Pl.'s Mem. Supp. Mot. Sum. J., ECF No. 12, at 14.  The APWU's claim, however, belies the undisputed facts in the record.  Indeed, the Union cites no facts to support its contention, and a lawyer's argument, of course, does not substitute for admissible evidence in support of or in defense against a summary judgment motion.  *See Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 29 (D.D.C. 2008); *Davis v. Dist.of Columbia*, No. CIV 05-2176, 2006 WL 3917779, at *5 (D.D.C. Sept. 28, 2006).

It is true, as the APWU suggests, that the question before Arbitrator Das was confined to determining the proper remedy for the interim conduct between the Global Settlement and the March 2013 arbitration award.  *See* Pl.'s Mem. Supp. Mot. Sum. J., ECF No. 12, at 14; *see generally* Suppl. Remedy Award, ECF No. 8-12, Reimer Decl., Ex. 10.  But that was not because the Postal Service somehow waived or rejected arbitration regarding the pre-Global Settlement disputes held in abeyance.  Rather, it was because the parties, *at the APWU's recommendation*, explicitly agreed to delay the pre-Global Settlement remedy question until they could schedule additional hearing days, while, at the same time, they also agreed to send to arbitration the interim conduct remedy question because that issue could be decided on the existing briefs and record.  The uncontroverted evidence provided by the Postal Service in support of its motion makes this reality clear.

On August 16, 2013, in response to the APWU's remedy reply brief, the Postal Service requested additional hearing days to develop the record about the proper remedy for the cases held in abeyance. *See* Postal Service Resp. Brief, ECF No. 8-8, Reimer Decl., Ex. 6 at 6-7. On September 11, 2013, the APWU emailed the arbitrator regarding the Postal Service's request, writing that "[a]lthough the APWU believes another day of hearing is unnecessary for a number of reasons, action within this part of the case appears to be necessary to the Postal Service fully implementing your award and the Global Settlement MOU." Email from Holmes to Das, ECF No. 8-9, Reimer Decl., Ex. 7. The APWU then explained that it "will agree to a hearing on the evidence the Postal Service wishes to present per its reply brief and any response thereto by the APWU." *Id.* After the APWU wrote this email, the parties were unable to identify a mutually convenient date for a hearing before Arbitrator Das,[3] so they decided to bifurcate the issues for arbitration between those that required further hearing days (*i.e.*, the remedy for the pre-Global Settlement conduct) and those that did not (*i.e.*, the remedy for the interim conduct). *See generally* Various Emails between Reimer and Holmes, ECF No. 8-10, Reimer Decl., Ex. 8.

Specifically, in an email on September 12, 2013, the Postal Service's counsel informed the APWU's counsel that he sought additional evidence regarding only the question of the appropriate remedy for conduct preceding the Global Settlement. *See id.* at 3. The APWU responded by proposing to "separate out and remove" the pre-Global Settlement issue, thus leaving for arbitration only the interim conduct remedy question. *See id.* The next day, the

---

[3]     The APWU also points out that the Postal Service attempted to schedule an arbitration hearing before Arbitrator Stephen Goldberg, who was not involved with the Global Settlement, rather than Arbitrator Das. *See* Pl.'s Mem. Supp. Mot. Sum. J., ECF No. 12, at 10-11. Although it is not clear to the Court why this distinction matters anyway, the APWU's argument is misleading because it omits the follow-up email from the Postal Service clarifying that the arbitrator should be Das, not Goldberg. *See* Email from Penn to McKinnon, ECF No. 15-3, Penn Decl., Ex. 1 at 3.

Postal Service followed up to clarify that the APWU's proposal was to have the arbitrator decide the interim period remedy question based on the briefs and leave the pre-Global Settlement period issue for "another day." *Id.* at 1. The APWU replied, "Yes, I think that's right." *Id.* A few days later, the APWU conveyed this plan to Arbitrator Das. *See* Email from Holmes to Das, ECF No. 8-11, Reimer Decl., Ex. 9. Consistent with the APWU's proposal, the arbitrator issued a supplemental remedy award in October 2013 granting the Union's requested remedy with respect to the time period between the Global Settlement and the March 2013 award. *See* Suppl. Remedy Award, ECF No. 8-12, Reimer Decl., Ex. 10 at 6, 11.

The undisputed facts therefore demonstrate that the Postal Service never agreed to "waive" or "exclude from arbitration" the question of how the Global Settlement applies to the cases held in abeyance. Particularly given the high burden required for establishing intent to remove an issue from arbitration, the APWU's argument that the Postal Service "expressly agreed not to have Arbitrator Das address the settlement of the long-pending grievances" simply is wrong. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24-25 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *United States Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."). It clearly was in the minds of both parties to delay the question for another day, and as such, the Union's argument that arbitration is not required fails.

**B. A Dispute Exists Regarding The Remedy For Pre-Global Settlement Conduct**

Having concluded that a dispute about how the Global Settlement applies to conduct preceding the agreement is arbitrable under Article 15, the Court next must determine whether such a dispute actually exists. If no dispute exists, the APWU may be correct that the Court should enforce the Global Settlement. But if there is a dispute, the Court cannot enforce the settlement until arbitration is exhausted and the dispute is resolved. This is because to be enforceable by a court, "a settlement agreement, like an arbitration award, must not only be final and [b]inding by the terms of the collective bargaining agreement, but it must also be sufficiently specific as to be capable of implementation." *United Mine Workers of Am., Dist. No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1097 (3d Cir. 1977) (citation omitted). As a result, "[c]ourts will not enforce a settlement agreement that is vague, ambiguous, incomplete, or unclear in its meaning and effect." *Id.* (citations omitted).

Rather than seek enforcement of an unclear provision in a collectively bargained-for settlement agreement, "[t]he clarification of uncertainties … is a task to be first performed according to the parties' chosen machinery for dispute resolution." *Id.*; *see also Hanford Atomic Metal Trades Council v. General Elect. Co.*, 353 F.2d 302, 307-08 (9th Cir. 1966) (explaining that interpretation of an unclear labor agreement is not the function of a district court). Thus, because the Court must "know exactly what it is being asked to enforce," it cannot enforce a settlement agreement under 39 U.S.C. § 1208 until a dispute is resolved fully through the grievance-arbitration process. *See, e.g., Roman v. U.S. Postal Serv.*, 821 F.2d 382, 386-89 (7th Cir. 1987) (explaining that exhaustion of contractual remedies is a prerequisite for a claim under 39 U.S.C. § 1208); *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 31 (D.D.C. 2006) ("To bring suit under [39 U.S.C. § 1208] plaintiffs would first have to have

exhausted the provisions of their collective bargaining agreement."); *Sullivan v. Potter*, No. CIV.A. 05-00818, 2006 WL 785289, at *3 (D.D.C. Mar. 28, 2006) ("Until the arbitration is final and the procedures set forth in the collective bargaining agreement are completed, this claim is premature and must be dismissed for failure to exhaust administrative remedies.").

The APWU argues that no dispute exists based on a statement made by a Postal Service representative under oath during arbitration about how to measure the hour limitations established in the Global Settlement, which eventually was resolved in the March 2013 arbitration award. Mike Mlakar, the Manager of Field Labor Relations for the Postal Service, was asked whether the Postal Service was "supposed to use this global settlement retroactively to go back and settle those grievances" held in abeyance. *See* June 27, 2012, Arbitration Tr., ECF No. 12-3, Ex. 2 at 29. Mr. Mlakar replied to this question,

> Yeah. Essentially if a postmaster had been — let's just say had been doing five hours more than that, then five hours would have been the appropriate remedy in that case. Likewise, if the postmaster had been doing five hours less than that, then our expectation would be that the union would withdraw that because they were applying the settlement.

*Id*. at 29-30. The APWU asserts that this testimony conclusively establishes that the Postal Service interprets the Global Settlement as applying retroactively to all conduct, which would appear to mirror the Union's interpretation.

The Postal Service, however, took a different position in its remedy briefing to Arbitrator Das following the March 2013 arbitration award. Initially, the APWU had argued through its briefing that "the rule established in and by the Global Settlement is unrebutted in fact and leads to only one reasonable interpretation — the Postal Service is obligated to apply the Global Settlement substantively, as affirmed and clarified by the Arbitrator's Merits Award, to all pending grievances held in abeyance behind Case No. Q06-4Q-C 10005587." APWU Remedy Reply Brief, ECF No. 8-7, Reimer Decl., Ex. 5 at 10. Writing in response, the Postal Service

explained that "[o]nce the parties exchanged remedy briefs, it became clear that the parties have a fundamental disagreement over the effect of the Global Settlement on the cases held in abeyance." Postal Service Resp. Brief, ECF No. 8-8, Reimer Decl., Ex. 6 at 7-8. This is because the Postal Service took the position that "cases pending Q06-4Q-C 10005587 were resolved by the terms of the Global Settlement and therefore not eligible for any additional remedy." *Id*. at 6; *see also* Postal Service Post-Award Brief, ECF No. 8-6, Reimer Decl., Ex. 4 at 9-10 (arguing that the Global Settlement does not apply as a remedy for conduct in the years preceding the agreement).

As an initial matter, the APWU provides no reason for why Mr. Mlakar's statement should be taken as the Postal Service's authoritative interpretation rather than its position in the remedy briefs, which were prepared later in time. If the Union is making some sort of estoppel argument, it cites no legal support for such a position. Nonetheless, the story is not so simple. In its opposition to the APWU's cross-motion for summary judgment, the Postal Service backs away from its position in the arbitration briefs that the Global Settlement was intended to close the cases held in abeyance without any remedy and offers a new position on the issue. *See* Def.'s Opp'n Pl.'s Mot. Summ. J., ECF No. 15, at 14 n.5.

As evidence of the Postal Service's revised position, it provides a declaration from Mr. Mlakar clarifying his prior testimony and describing the Postal Service's stance moving forward. Specifically, Mr. Mlakar attests that in June 2011 he met with the APWU's Mike Morris, and the two of them agreed that parties in the field offices should resolve the cases held in abeyance by "using their best judgment," rather than applying one, catch-all remedy:

> We agreed that the parties in the field should be allowed the opportunity to
> resolve the cases on their own accord using their best judgment, and the global
> settlement as a guideline. There was no agreement that the parties must apply the

> new work hour limits of the Global Settlement for an hour by hour payout remedy
> in every grievance.

Mlakar Decl., ECF No. 15-2, at ¶ 7. Based on Mr. Mlakar's explanation, the Postal Service asserts that it "no longer maintains that the parties agreed to close all the cases with no remedy." Def.'s Opp'n Pl.'s Mot. Summ. J., ECF No. 15, at 14 n.5. Instead, it now argues that the Global Settlement "language at most requires that the cases held in abeyance be decided on a case-by-case basis with the Global Statement as a guideline, but not a bright line rule applicable to all cases." *Id*. Furthermore, the Postal Service explains that "if Arbitrator Das agrees with [its] interpretation, [he] will then have to address the process for conducting a case-by-case assessment of the cases held in abeyance." *Id.*

It is well established in this Circuit that a party "cannot create or resurrect a genuine issue of material fact and thereby defeat summary judgment by filing a self-serving affidavit that contradicts previous sworn testimony." *Thompson v. Islam*, No. Civ.A. 01-0585, 2005 WL 3262926, at *3 (D.D.C. July 29, 2005); *see also St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160 (D.D.C. 2008). However, "[i]f the supplemental affidavit [or declaration] does not contradict but instead clarifies the prior sworn statement, then it is usually considered admissible." *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007).

Although the position the Postal Service adopts through the declaration is different than the stance it took in earlier briefing to the arbitrator and this Court, Mr. Mlakar's declaration does not so squarely contradict his prior statement that it is inadmissible. Instead, the declaration appears to clarify the ambiguity embedded in his testimony. The Court also notes that Mr. Mlakar's testimony already contradicted the Postal Service's position in its arbitration remedy briefs, which inherently created a feeling of uncertainty about its interpretation. The declaration,

moreover, provides a thorough explanation about the question Mr. Mlakar thought he was answering in the testimony and how that affected what he meant when speaking under oath. *See* Mlakar Decl., ECF No. 15-2, at ¶ 9 ("I did not intend to say that every case held in abeyance should be settled by applying the work hour limits of the Global Settlement. My assumption was that Patrick Devine (the Postal Service advocate) was asking me about a hypothetical situation where the parties in the field already had decided to apply the Global Settlement's work hour limitations."); *cf. Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) ("[T]he prior sworn statement will receive controlling weight unless the shifting party can offer persuasive reasons for believing the supposed correction."). For these reasons, the Court accepts the declaration as admissible evidence clarifying the Postal Service's position regarding application of the Global Settlement to the cases held in abeyance.[4]

The question remains, however, whether a dispute now exists between the APWU's position and the Postal Service's stance, as clarified through Mr. Mlakar's declaration. Indeed, the Postal Service's revised position appears to be more similar to that of the APWU than it initially was, given that the Postal Service now concedes that some remedy may be appropriate in certain circumstances. Nonetheless, the Court finds that, at the very least, a sliver of light remains between the parties' interpretations because the Postal Service believes that the Global

---

[4]    The APWU also suggests that the explanation in the Joint Contract Interpretation Manual ("JCIM") is evidence that the Global Settlement does not require further interpretation. *See* Pl.'s Mem. Supp. Mot. Sum. J., ECF No. 12, at 9. During each collective bargaining agreement period, the parties jointly issue a JCIM "as a resource for administrating the National Agreement." McKinnon Decl., ECF No. 12-4, at ¶ 14. The JCIM has a section referencing the work hour limits of the Global Settlement which states that "[w]here bargaining unit work which would have been assigned to employees is performed by a supervisor and such work hours are not *de minimus*, the bargaining unit employee(s) who would have been assigned the work shall be paid for the time involved at the applicable rate." 2012 JCIM, ECF No. 12-6, McKinnon Decl., Ex. B at 36. As the Postal Service points out, however, there is nothing in the JCIM that resolves the present dispute about the remedy for pre-Global Settlement conduct. *See* Def.'s Opp'n Pl.'s Mot. Summ. J., ECF No. 15, at 12 n.3.

Settlement was intended to be applied on a case-by-case basis as a guideline, while the APWU argues that the settlement established bright-line rules applicable to all cases held in abeyance. When such a gap exists, the grievance-arbitration process must fill it, not a court.

*　　*　　*

Article 15 of the APWU-Postal Service 2010 National Agreement establishes a collectively bargained-for grievance-arbitration process that applies to disputes about the interpretation and application of the Global Settlement.  Here, there is no genuine dispute of material fact that a disagreement exists between the APWU and the Postal Service regarding how the Global Settlement applies to a specific set of cases that were held in abeyance while the settlement was being negotiated, and it is clear that the APWU has failed to exhaust the necessary grievance-arbitration process to resolve that dispute before filing the instant lawsuit. As such, the APWU's action is premature, and the Court cannot grant the relief the Union seeks. *See Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*, 646 F. Supp. 2d 1, 4 (D.D.C. 2009) (granting motion to dismiss for lack of jurisdiction when the APWU failed to exhaust Article 15's grievance-arbitration process because "[u]nder the Postal Reorganization Act, contractual remedies must be exhausted before judicial intervention can occur").

## V.  CONCLUSION

For the foregoing reasons, the Postal Service's motion to dismiss or, in the alternative, for summary judgment, is **GRANTED**, and the APWU's cross-motion for summary judgment is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 26, 2014

RUDOLPH CONTRERAS
United States District Judge